# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CICELY BANKS,

        Plaintiff,

        v.

ILLINOIS CENTRAL RAILROAD
COMPANY d/b/a CANADIAN
NATIONAL RAILWAY COMPANY,

        Defendant.

Case No. 18-cv-2506

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Plaintiff Cicely Banks sues her employer, Defendant Illinois Central Railroad Company, d/b/a Canadian National Railway Company, alleging race discrimination under Title VII, 42 U.S.C. § 2000e, *et seq.* (Count I) and 42 U.S.C. § 1981 (Count II), and gender discrimination under Title VII, 42 U.S.C. § 2000e, *et seq.* (Count III). [1].[1] Defendant moves for summary judgment. [39]. For the reasons explained below, this Court partially grants and partially denies Defendant's motion.

Additionally, Plaintiff moves to: (1) strike all declarations used and submitted by Defendant in support of its motion for summary judgment based upon untimeliness, [45]; and (2) deny Defendant's motion for summary judgment for violating of Local Rule 56.1, or in the alternative, strike Defendant's Local Rule 56.1

---

[1] Plaintiff's complaint also contains an age discrimination claim (Count IV). [1]. On August 30, 2018, based upon the parties' agreed partial stipulation of dismissal, [24], this Court dismissed Count IV with prejudice. [25].

1

statement of undisputed material facts, [46]. For the reasons explained below, this Court denies both motions.

## I. Background

The following facts come from Defendant's Local Rule 56.1 statement of material facts, [41], Plaintiff's response to Defendant's statement of material facts, [57], Plaintiff's statement of additional facts, [58], and Defendant's response to Plaintiff's statement of additional facts, [67].

### A. Plaintiff's Motions

#### i. Plaintiff's Motion to Strike All Declarations

Plaintiff moves to strike all declarations used and submitted by Defendant in support of its motion for summary judgment, based upon untimeliness. [45]. Plaintiff maintains that on June 15, 2018, Plaintiff propounded her first sets of interrogatories and requests for production of documents, asking for all "statements, oral or written, of any individual with knowledge, information and/or who witnessed the discrimination Plaintiff complains of in this action" and any "other documents which relate to the Defendant's responses, denials, and/or defenses" in Defendant's answer that "have not otherwise been requested and produced." [45] ¶¶ 2–4. Additionally, Plaintiff states that several other requests called for documents pertaining to the positions Plaintiff applied for and Defendant's reasons for not selecting Plaintiff for those positions, among other matters. *Id.* ¶ 5.

According to Plaintiff, in "early November 2018," Plaintiff's counsel spoke with Defendant's counsel over the phone, and at this time Plaintiff's counsel asked

whether she had obtained any statements or declarations from any witnesses. *Id.* ¶ 6. Defendant's counsel stated that she had not. *Id.* On November 21, 2018, Defendant then filed its motion for summary judgment, and in support submitted seven declarations from various witnesses, which Defendant had not produced in response to Plaintiff's discovery requests. *See* Decl. of Sue Adzgowski [43-4] (Ex. 13); Decl. of Steven Albright [43-4] (Ex. 12); Decl. of Patrick Crain [43-1] (Ex. 8); Decl. of Rolando Jimenez [43-4] (Ex. 10); Decl. of Katie Roop [43-4] (Ex. 14); Decl. of Duane Spears [43-4] (Ex. 9); Decl. of David Sprankle [43-4] (Ex. 11).

Defendant counters that as of the close of discovery on November 1, 2018, none of the above seven declarations existed. [48] at 2. Defendant also notes that its Mandatory Initial Discovery Responses, served in September 2018, identified all of the witnesses who made the above declarations with the exception of Katie Roop, who Plaintiff identified in June 2018. *Id.*

Moreover, Defendant states that Plaintiff's counsel is mistaken about the date and circumstances of the phone conversation at issue; according to Defendant, counsel for both parties spoke on or around October 11, 2018, at which time Plaintiff's counsel asked whether Defendant could resend its document production from September 27, 2018 in the form of one combined PDF document, rather than in separate documents. *Id.* At this time, Plaintiff's counsel also asked whether the production contained any statements or declarations. *Id.* The September 27, 2018 production did not, and Defendant's counsel relayed this fact to Plaintiff's counsel. *Id.* Defendant's counsel does not recall having any conversation with Plaintiff's

counsel between November 15, 2018 (when the first declaration listed above was signed) and November 21, 2018, when Defendant filed its motion for summary judgment. *Id*. at 2–3; [48-1] ¶ 6.

Regardless of the circumstances surrounding the phone call, this Court denies Plaintiff's motion to strike, [45]. Federal Rule of Civil Procedure 12(f) governs motions to strike and instructs that that courts "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Defendant's declarations do not constitute pleadings, and thus Plaintiff's motion is improper under Rule 12(f). *See, e.g., Hall v. United of Omaha Life Ins. Co.*, No. 10-CV-0012-MJR, 2011 WL 1256836, at *1 (S.D. Ill. Apr. 4, 2011) ("The document at issue, a declaration in opposition to [defendant's] motion for summary judgment, is not considered to be a pleading, so a motion under 12(f) is not a proper proceeding.").

And considering the underlying merits of Plaintiff's request, she notably fails to identify any prejudice created by the timing of the declarations, given that the parties had identified all the relevant witnesses prior to close of fact discovery, as well as the exhibits upon which they based their declarations. *See generally* [45]. Accordingly, this Court cannot find this case constitutes the rare scenario in which a motion to strike is warranted. *See Redwood v. Dobson*, 476 F.3d 462, 471 (7th Cir. 2007) ("Motions to strike disserve the interest of judicial economy. The aggravation comes at an unacceptable cost in judicial time."); *Heller Fin., Inc. v. Midwhey Powder*

*Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989).  Plaintiff's motion to strike, [45], is denied.

### ii.    Plaintiff's Motion to Strike Defendant's LR 56.1 Statement

Plaintiff also moves to deny Defendant's motion for summary judgment for violation of Local Rule 56.1, or in the alternative, strike Defendant's Local Rule 56.1 statement of undisputed material facts, [46].  She argues that Local Rule 56.1 requires Defendant's statement of material facts to consist of short, numbered paragraphs, whereas Defendant included "compound, convoluted and very lengthy paragraphs that contain several separate and distinct material facts" to circumvent the rule's 80 statement limit.  *Id.* ¶ 3.  This Court disagrees.

This Court maintains broad discretion to enforce the local rules governing summary judgment.  *See, e.g.*, *Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014); *Benuzzi v. Bd. of Educ. of Chi.*, 647 F.3d 652, 655 (7th Cir. 2011).  Courts "are not, however, obligated to require strict compliance."  *See Maher v. Rowen Group, Inc.*, No. 12 C 7169, 2015 WL 273315, at *7 (N.D. Ill. Jan. 20, 2015); *see also Kelly v. Chambers*, 07 C 1005, 2009 WL 765267, at *3 n.11 (N.D. Ill. Mar. 23, 2009) (denying a motion to strike paragraphs that plaintiff argued were too long and contained multiple facts).

Local Rule 56.1(a) requires only that Defendant's Rule 56.1 statement "consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."  Nothing in Rule 56.1 instructs parties

to include only one fact per paragraph. And while some of Defendant's paragraphs contain multiple facts, such facts "are logically grouped and the combinations make sense in context." *Maher*, 2015 WL 273315, at *7 (citing *Portis v. City of Chi.*, 510 Supp. 2d 461, 463 (N.D. Ill. 2007)); *see, e.g.*, [41] ¶ 74.

Moreover, many of the paragraphs to which Plaintiff objects are long in part because: (1) they contain lengthy citations to multiple pieces of record evidence, *see, e.g.*, [41] ¶ 74; and (2) Plaintiff failed to initially clarify the positions at issue in this suit, as this Court discusses below, *see, e.g.*, *id.* ¶ 49.

Absent any indication that Plaintiff could not understand or otherwise sufficiently respond to Defendant's LR 56.1 statement of facts, this Court declines to strike the entirety of Defendant's statement or deny Defendant's motion for summary judgment based upon what constitute, at most, technical violations of LR 56.1. *Maher*, 2015 WL 273315, at *7; *Kelly*, 2009 WL 765267, at *3 n.7. Plaintiff's motion to strike, [46], is denied.

### B. Plaintiff's Work History

Plaintiff—an African-American woman—worked in a variety of transportation clerk jobs for Defendant since 2008. [41] ¶¶ 9, 16. Her resume lists the following duties under the heading of "Transportation Clerk" for "2008-Present":

- Billing
- Special Charges (Setbacks, IPSW and BNSF delays)
- Order Cars from Fleet Management
- Heavy Customer Service
- Optional Services
- Error Deliveries from Foreign Railroads
- Train Reporting (Waterloo, Glen yard, Hawthorne and Intermodal)
- Interchanges

6

- Crew Calling
- Tower (Dispatching)

[43-1] (Ex. 2) (Sub Ex. 5).[2] Prior to working for Defendant, she spent one year working for Navistar International Corporation as a Payroll Pension Administrator. *Id.* Before working at Navistar, Plaintiff worked at LaSalle Bank for seven years as an ARP operations associate, fraud analyst, and trust and pension clerk. *Id.* She holds a bachelor's degree in psychology from Roosevelt University. *Id.*

Over the course of Plaintiff's employment with Defendant, she applied for various management positions in search of an "office setting" position. [41] ¶ 13. When applying to these positions, Plaintiff concedes that she never tailored her resume to the specific job or role, nor did she have an interest in working in a particular field. *Id.*

In total, Plaintiff's response memorandum identifies 11 positions for which she claims she applied and was unlawfully rejected based upon race and gender. *See* [55] at 4. At the parties' motion hearing on March 5, 2019, however, Plaintiff clarified that her discrimination claims arise only out of the following three positions: (1) Benefits Administrator – Attendance Management; (2) Administrative Assistant – Police Services (4871BR); and (3) Officer Crew Lodging (5507BR). [69]. Accordingly, this Court analyzes these three positions for purposes of Defendant's motion for summary judgment.

---

[2] Unless otherwise specified, this Court uses the resume submitted by Plaintiff when discussing her relevant work experience and qualifications for a given position. *Compare* [43-1] (Ex. 2) (Sub Ex. 5) *with* [43-4] (Ex. 11) (Sub Ex. C).

**C.      Benefits Administrator – Attendance Management**

Plaintiff applied for a variety of Benefits Administrator – Attendance Management position openings throughout her employment with Defendant: once on January 4, 2013 (listing 2348BR), [41] ¶¶ 19, 24; once on December 3, 2013 (listing 3542BR), *id*. ¶¶ 19, 63; and once on July 4, 2014 (listing 4502BR), *id*. ¶¶ 19, 33. For clarity, this Court refers to each position by their listing number.

Benefits Administrator – Attendance Management employees manage Defendant employees' leave and attendance. *Id*. ¶ 24. When Plaintiff first applied for the 2348BR listing in January 2013, she interviewed by telephone later that month. *Id*. ¶ 25. The notes from this interview—completed contemporaneously by recruiter Stephanie Rogers—reflect that Rogers consistently ranked Plaintiff as a 2 or 2.5 out of 5 in every question category and evaluated her overall as "somewhat worse" than other candidates. *Id*. ¶ 27; [43-1] (Ex. 8) (Sub Ex. 8); [43-1] (Ex. 1) at 129. In response to questions about Plaintiff's motivations and interest in the job, the interviewer initially noted that Plaintiff "has Benefits background [and] wants to get back into it." [41] ¶ 27; [43-1] (Ex. 8) (Sub Ex. 8). But, in response to questions about Plaintiff's relevant work experience, the interviewer subsequently noted that she "did some payroll work previously, but not really Benefits." *Id*. At the end of the interview notes—beside the box Rogers checked to not recommend Plaintiff for further selection steps—Rogers wrote that Plaintiff appeared "not highly motivated," had "no HR or Benefits background," and "didn't take [the] interview very seriously."

8

*Id.* Defendant did not select Plaintiff and notified her of this decision on February 7, 2013. *Id.* ¶ 19.

Ronaldo Jimenez served as the hiring manager for both the 4502BR and 3542BR listings to which Plaintiff subsequently applied. *Id.* ¶¶ 33, 63; [43-4] (Ex. 10) ¶ 3. According to Jimenez, he declined to interview or select Plaintiff for either position because he "understood that she had not interviewed well" for the earlier 2348BR listing. *Id.* Jimenez also explained that no one had recommended Plaintiff to him for further consideration. [43-4] (Ex. 10) ¶¶ 3, 7. Defendant notified Plaintiff of her rejection for the 4502BR position on September 10, 2014, and the 3542BR listing on January 13, 2015. [41] ¶ 19. Jimenez hired Gerardo Torres—a Hispanic male—and Tasha Willoughby—an African-American female—for the 4502BR listing. *Id.* ¶ 34. Jimenez hired Armando Flores—a Hispanic male—and Worth Phillips—a White male—for the 3542BR listing. *Id.* ¶ 64.

### D.  Administrative Assistant – Police Services (4871BR)

On September 26, 2014, Plaintiff applied for the position of Administrative Assistant – Police Services (4871BR). *Id.* ¶ 68. The position constituted a Grade 12 position, with a salary range of $37,000 – $56,300. *Id.* ¶ 69. At the time, Plaintiff earned approximately $58,718 annually. *Id.*

Defendant selected Plaintiff for an interview, but according to Defendant, Plaintiff "bowed out of the interview" shortly after arriving once she discovered the differential in pay. *Id.*; [43-1] (Ex. 3) at 114−17. Plaintiff denies that this interaction occurred. [43-1] (Ex. 1) at 368−69. Plaintiff received a rejection notification for this

position sometime later in 2014. [41] ¶ 19. The hiring manager for the position—Assistant Chief of Network Security and Intelligence, David Sprankle—ultimately hired Amber Mersereau (Mersereau) for the position. *Id.* ¶ 70; [43-4] (Ex. 11) ¶ 3. Amber is married to Mark Mersereau, who works as a recruiter for Defendant; he did not participate in Amber's application, interview, or hiring process, but did participate in the hiring process for other individuals. [41] ¶¶ 69−70 n.6; [43-1] (Ex. 3) at 115−16.

### E.    Officer Crew Lodging (5507BR)

On March 5, 2015, Plaintiff applied for the Officer Crew Lodging (5507BR) position. [41] ¶ 72. Broadly speaking, the position entailed managing Defendant's crew lodging throughout the southern region of the U.S. [43-1] (Ex. 2) (Sub Ex. 14). The hiring manager for the position, Sue Adzgowski, ultimately selected Brett Horvath, a White male, for the position. [41] ¶¶ 73−74. Adzgowski did not interview Plaintiff or Horvath for this specific position, as she, along with Mark Mersereau, had recently interviewed both individuals for a different position (Manager of Contract Compliance (5141BR)), and thus retained familiarity with their qualifications. *Id.*

According to Adzgowski, Plaintiff's interview for the Manager of Contract Compliance position "lacked professionalism." *Id.* ¶ 73; [43-4] (Ex. 13) ¶ 4. Specifically, Adzgowski noted that Plaintiff showed up late to the interview, made excuses about her tardiness, and took an overall "casual approach" to the interview. *Id.*; [58] ¶ 20. Adzgowski also thought Plaintiff's resume "was brief on the details, seemed generic, and demonstrated a lack of effort," in that it contained many bullet

points, but lacked substance about her background and work experience. [43-4] (Ex. 13) ¶ 4. As the hiring manager, Adzgowski maintained ultimate authority for who she wanted to select for the position. [43-1] (Ex. 3) at 62.

## II. Legal Standard

Summary judgment is proper where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014). The non-moving party has the burden of identifying the evidence creating an issue of fact. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). To satisfy that burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; "there must be evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

## III.   Analysis

Plaintiff claims that Defendant discriminated against her based upon race and gender, in violation of Title VII and 42 U.S.C. § 1981, when it declined to hire her for the three positions at issue: Benefits Administrator – Attendance Management; (2) Administrative Assistant – Police Services (4871BR); and (3) Officer Crew Lodging (5507BR).  This Court analyzes the hiring process for each position in turn.[3]

When analyzing Title VII race and sex-based claims on summary judgment, courts ask "whether the evidence would permit a reasonable factfinder to conclude" that the plaintiff's race "caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *Perry v. Dept. of Human Servs.*, 345 F. Supp. 3d 1019, 1026 (N.D. Ill. 2018).  Because courts "evaluate § 1981 claims under the same rubric as Title VII claims," this Court addresses Counts I and II together.  *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 299 (7th Cir. 2004); *see also Whitfield v. Int'l Truck & Engine Corp.*, 755 F.3d 438, 442 (7th Cir. 2014).

In evaluating the record, courts must consider the evidence "as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence."  *Ortiz*, 834 F.3d at 765.  This holistic analysis, set forth in *Ortiz*, supplements, rather than alters, the

---

[3] Defendant also argues that this Court should grant summary judgment in its favor because: (1) many of Plaintiffs' claims are time-barred; and (2) she failed to properly exhaust her administrative remedies due to lack of specificity.  [42] at 1.  Given the "leniency with which courts must construe the allegations of an EEOC charge," this Court finds Defendant's exhaustion arguments unpersuasive.  *Miranda v. Chicago Hous. Auth.*, No. 97 C 8447, 1998 WL 246448, at *5 (N.D. Ill. 1998) (citing *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.*, 538 F.2d 164, 167 (7th Cir. 1976).  And because this Court finds that the majority of Plaintiffs' claims fail on the merits, it need only consider Defendant's statute of limitations argument with respect to one position, as discussed further below.

burden-shifting framework for discrimination claims that the Supreme Court created in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 793 (1973). *See Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 719−20 (7th Cir. 2018); *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). As such, courts now conduct the *McDonnell Douglas* analysis if the parties present arguments "in those terms," but also assess the plaintiff's evidence "cumulatively" under *Ortiz*. *David*, 846 F.3d at 224.

To demonstrate a prima facie case under *McDonnell Douglas* for failure to hire, a plaintiff must provide evidence showing that: (1) she belonged to a protected class; (2) she was qualified for an open position for which she applied; (3) her application for employment was rejected; and (4) defendant employer filled the position with someone outside the protected class who had similar or lesser qualifications. *See, e.g.*, *Whitfield*, 755 F.3d at 444; *Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 2005). Once a plaintiff establishes a prima facie case, the burden shifts to the employer to offer a legitimate, non-discriminatory reason for the employer's decision. *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 (7th Cir. 2014). If the employer does so, the burden then returns to the plaintiff to prove, by a preponderance of the evidence, that the proffered reason constitutes pretext for discrimination. *Id.*

## A. McDonnell Douglas Analysis

### i. Benefits Administrator – Attendance Management

Defendant argues that Plaintiff: (1) fails to establish a prima facie case as to the Benefits Administrator – Attendance Management; and (2) cannot show that

Defendant's decision to hire other individuals based upon their qualifications constitutes pretext. [42] at 9, 14−15. This Court agrees with Defendant, and finds that even if Plaintiff can establish a prima facie case with respect to the position, she cannot demonstrate pretext with respect to any of Defendant's hiring decisions.

As an initial matter, Plaintiff presents conflicting arguments as to the specific Benefits Administrator – Attendance Management listing she disputes in this case. In her response to Defendant's LR 56.1 statement of material facts, she clarifies: "the Benefits Administrator – Attendance Management position that is at issue in this litigation is the one [Plaintiff] applied for in 2014"—the 4502BR listing. [57] ¶ 29 (citing [43-1] (Ex. 1) at 168−69; [43-1] (Ex. 2) (Sub Ex. 9)). In doing so, she cites specifically to the 4502BR job listing. *Id.* In Plaintiff's response memorandum, however, she disputes only whether she possessed better qualifications than candidates hired for the 2348BR and 3542BR listings. [55] at 15−16. Nevertheless, this Court finds that Plaintiff fails to raise an issue of genuine material fact as to the individuals hired for the 4502BR listing, or those individuals whom she challenges in her response memorandum.

According to the Benefits Administrator – Attendance Management job description, the position's "[p]referred" experience, education, and knowledge included:

- Bachelor's degree in Human Resources or related field preferred.
- Working knowledge of the federal (FMLA) and state family leave laws, as well as other statutory leaves in all covered CN work States.
- Working knowledge of HR employment law, including as it relates to leaves, disability, and HIPAA.
- Familiarity with working in a union environment.

- Demonstrated ability with relevant computer applications; including Outlook, Excel, Qcera/Itimebank Software or other Leave Administration Software, Working knowledge of CATS Crew Management System, or similar time keeping HRIS.
- Two or more years experience in relevant HR and/or Leave Administration preferred.
- Demonstrated experience in handling sensitive and confidential matters.
- Previous experience working for Transportation/Rail Industry or similar 24/7 Operation.
- Excellent verbal and written communication skills, problem analysis, problem solving, organizational skills, attention to detail, initiative, adaptability, team work, and stress tolerance.

[43-1] (Ex. 2) (Sub Ex. 9).[4]

Plaintiff's resume indicates that she has satisfied some of these preferences; for example, she did obtain a bachelor's degree, albeit in psychology, and she certainly had previous experience working for the transportation or rail industry given her employment with Defendant since 2008. [43-1] (Ex. 2) (Sub Ex. 5). But, even assuming Plaintiff held sufficient qualifications for the position, she cannot demonstrate that Defendant's decisions to hire other individuals constituted pretext for race or gender-based discrimination.

In examining pretext, the question "is whether the employer honestly believed its proffered reason for discharge." *Essex v. UPS*, 111 F.3d 1304, 1310 (7th Cir. 1997). And when an employer's proffered non-discriminatory reason for hiring an individual other than plaintiff is that it selected the most qualified candidate:

> evidence of the applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of

---

[4] This description comes from the 4052BR listing, [43-1] (Ex. 2) (Sub Ex. 9), and contains language identical to the 2348BR listing, [43-1] (Ex. 2) (Sub Ex. 4) and the 3542BR listing, [43-1] (Ex. 2) (Sub Ex. 6).

impartial judgment that the plaintiff was clearly better qualified for the position at issue.

*Mlynczak v. Bodman*, 442 F.3d 1050, 1059–60 (7th Cir. 2006).

First, Plaintiff's response memorandum fails to even mention Torres and Willoughby—the individuals hired for the 4502BR listing—and thus she has waived any arguments with respect to their qualifications. *See generally* [55]; *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Moreover, Willoughby, as an African-American woman, falls within Plaintiff's protected class. [41] ¶ 34. And Plaintiff offers no evidence to show any pretext in Jimenez' decision to hire Torres based upon: (1) a recommendation from a current Benefits Administrator employee; (2) a strong interview performance; and (3) the fact that he had already performed well as a temporary employee in the Benefits Administrator – Attendance Management role. [41] ¶ 34–35; [43-4] (Ex. 10) ¶ 9.

Second, Plaintiff argues that she possessed superior qualifications to Mike Wolski—a White male hired for the 2348BR listing—because he had no human resources or benefits background. [55] at 15. But Defendant states that it hired Wolski because he had experience working in a union environment and using the CATS Crew Management System for scheduling purposes—preferences listed in the job description. [41] ¶ 38. Wolski also had experience as a transportation clerk—like Plaintiff—and yardmaster for Defendant, and contemporaneous interview notes reflect that he came across as "articulate" and "highly motivated." [43-1] (Ex. 8) (Sub Ex. 3 and 4).

And while Plaintiff claims she has superior human resources and benefits experience based upon her employment prior to Defendant, her interviewer concluded, based upon Plaintiff's answers, that she only "did some payroll work previously, but not really Benefits" and appeared "not highly motivated." [43-1] (Ex. 8) (Sub Ex. 8). With respect to Plaintiff's motivation, she concedes that she did not have an interest in working for a particular field within Defendant's company structure. [41] ¶ 13.

And to the extent Plaintiff's resume lists, as bullet points, "Collecting and Analyzing HR documents" and "Benefit Enrollment," it states that she performed these duties only from 2007 to 2008 while working at Navistar—one year short of the job description's two-year preference. [43-1] (Ex. 2) (Sub Ex. 5); [43-1] (Ex. 1) (Sub Ex. 9). Further, Plaintiff testified that prior to applying for the Benefits Administrator – Attendance Management positions, she never worked in human resources, but instead "worked along[]side with the HR people" at Navistar. [41-3] (Ex. 1) at 137).

Accordingly, based upon the record, the nature of Plaintiff and Wolski's qualifications lack the requisite differences to establish pretext, particularly given that the job description listed human resources experience as one of many preferences, rather than a strict requirement. [43-1] (Ex. 1) (Sub Ex. 9).

Plaintiff similarly argues that Armanda Flores—a Hispanic male hired for the 3542BR listing—held insufficient qualifications for the position, as he had no background in human resources, benefits, FMLA, or HIPAA, and had worked as a

transportation clerk for Defendant for just less than one year, compared to Defendant's six years. [55] at 15. But Plaintiff testified that she herself had no work experience with the FMLA or HIPAA. [43-1] (Ex. 1) at 137. Further, Defendant states that it chose Flores because he answered questions well in his interview, had previously worked in a customer service capacity at JP Morgan Chase, and in his role as a transportation clerk for Defendant, handled scheduling for other employees and notified them about reporting to duty. [41] ¶ 65; [43-1] (Ex. 8) (Sub Ex. 10). Moreover, Defendant stated that it chose Flores because of his Bachelor's of Science degree in Business Administration. *Id*. Again, given the record, this Court cannot find the differences between Plaintiff and Flores' qualifications so favorable to Plaintiff for purposes of pretext, particularly given: (1) that human resources experience constituted one of many preferences listed in the job description; (2) Flores' relevant degree; (3) Flores' experience in customer service and interview performance; and (4) Flores' experience in the same transportation clerk role as Plaintiff, albeit for less time.

Finally, Plaintiff argues that Worth Phillips—a White male also hired for the 3542BR listing—held inferior qualifications because he lacked human resources and benefits experience, or a sufficient history of employment in general. [55] at 15−16. But, Phillips' resume shows that he had served as an Assistant Trainmaster and Trainmaster with Defendant for over a year, and had also worked as a Special Projects Coordinator for Defendant for over a year. [43-1] (Ex. 8) (Sub Ex. 13). Although Plaintiff dismisses Phillips' experience working on a political campaign,

[55] at 16, his work "cold calling" and otherwise talking to 22,000 voters remains relevant to the job description, which lists the "ability to field multiple calls and call types in a fast-paced environment" as one of the position's "Main Job Tasks and Responsibilities." *Id.*; [43-1] (Ex. 2) (Sub Ex. 9). And Plaintiff and Phillips both held bachelor's degrees in the social sciences—Plaintiff in psychology, and Phillips in political science. [43-1] (Ex. 8) (Sub Ex. 13). Jimenez also explained that he hired Phillips in part because another manager recommended him, and in part because he gave thoughtful interview responses. [43-4] (Ex. 10) ¶ 6.

Again, even though Plaintiff did work for Defendant longer than Phillips, and Plaintiff's resume states that she had a year of human resources and benefits experience, this Court cannot find these difference "so favorable" to Plaintiff, given: (1) their comparable degrees; (2) Phillips' experience working for Defendant as a Special Projects Coordinator and Assistant Trainmaster and Trainmaster; and (3) that the job description listed human resources and/or benefits experience as just one of many preferences.

In short, Plaintiff contends that she had superior qualifications to the above candidates, and thus that Defendant's hiring choices demonstrate pretext, solely based upon: (1) her employment with Defendant since 2008; and (2) her year of experience as a payroll pension administrator at Navistar. [55] at 2, 14. But Title VII "does not require employers to make promotions based on seniority." *Tai v. Shinseki*, 325 Fed. Appx. 444 (7th Cir. 2009) (citing *Hall v. Forest River, Inc.*, 536 F.3d 615, 620 (7th Cir. 2008)); *see also Sublett v. John Wiley & Sons, Inc.*, 463 F.3d

731, 738 (7th Cir. 2006) (finding evidence that plaintiff had more seniority and better relations with employees than hired individual insufficient to establish pretext). And even crediting Plaintiff's resume summary of her human resources and benefits experience—a generous construction given Plaintiff's admission that she merely worked alongside human resources employees at Navistar, [43-1] (Ex. 8) (Sub Ex. 8)—this Court cannot find that one year of such experience creates a difference "so favorable" that "there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified." *Mlynczak*, 442 F.3d at 1059−60.

Aside from Plaintiff's subjective belief in the value of her own qualifications, she offers no evidence of pretext as to the Benefits Administrator – Attendance Management position. As such, her race and gender discrimination claims under both Title VII and section 1981 cannot withstand scrutiny under the *McDonnell Douglas* analysis.

### ii. Administrative Assistant – Police Services (4871BR)

Defendant presents multiple arguments as to why this Court should grant its motion for summary judgment as to the Administrative Assistant – Police Services (4871BR) listing. First, Defendant notes that because it hired Mersereau—a woman—Plaintiff's gender discrimination claim must fail as to this position. [42] at 9. Plaintiff does not dispute this argument, and this Court agrees.

Second, Defendant argues that: (1) Mersereau possessed better qualifications than Plaintiff; and (2) even if Plaintiff could establish a prima facie case, she cannot

show that the differences in their qualifications sufficiently favor to Plaintiff to indicate pretext. [65] at 14–15. This Court disagrees, and finds that Plaintiff has established a triable issue as to pretext, based upon race, due to her superior qualifications.

### 1.  Defendant's Statute of Limitations Argument

Defendant argues Section 1981 time-bars this claim, because it rejected Plaintiff for the police services position in mid-2014. [41] at 1; [65] at 5–6. But under Seventh Circuit law, "a two-year statute of limitations applies to Section 1981 claims relating to pre-contract formation conduct, such as failure-to-hire claims, and a four-year statute of limitations applies to Section 1981 claims relating to post-contract formation conduct," such as failure-to-promote claims. *Hunt v. Pers. Staffing Grp., LLC*, No. 16-CV-11086, 2018 WL 1014513, at *6 (N.D. Ill. Feb. 22, 2018) (citing *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 269 n.4 (7th Cir. 2004)); *see also Rainey v. UPS*, 543 Fed. Appx. 606 (7th Cir. 2013) (explaining that the four-year statute of limitations for 1981 claims "applies only to claims based on conduct occurring *after* the formation of an employment contract.") (collecting cases).

Here, the police services position presents a unique situation, as Plaintiff arguably applied to a position that constituted a demotion, rather than a promotion, from her transportation clerk position. Nonetheless, Plaintiff's application took place after the formation of her original employment contract with Defendant. [43-1] (Ex. 11) (Sub Ex. C) (showing Defendant first hired Plaintiff in 2008). Accordingly, this Court finds that the four-year statute of limitations applies, and thus that Plaintiff's

Section 1981 claim with respect to the police services position is not time-barred. *See* [41] ¶ 19 (showing that Defendant rejected Plaintiff for this position after September 2014, within four years of Plaintiff filing this suit in April 2018).

## 2. Plaintiff's Qualifications

In evaluating Plaintiff's prima facie case of race-based discrimination, neither party disputes that: (1) Plaintiff falls within a protected class; (2) Plaintiff possessed the requisite qualifications for the police services position; and (3) Defendant rejected Plaintiff for the role.[5] *See generally* [41] at 7, 9; [65] at 13−14. Rather, Defendant argues that the two candidates were not similarly situated, and thus that it selected Mersereau because she possessed better qualifications than Plaintiff. *Id.*

This Court cannot agree. Based upon the current record, "no dispute" among reasonable persons of impartial judgment can exist as to whether Plaintiff possessed better qualifications for the position, and thus that Plaintiff establishes a genuine issue of material fact as to pretext with respect to this position. *Mlynczak*, 442 F.3d at 1059−60.

The 4871BR job description lists a number of responsibilities, talents, and experiences for prospective candidates, such as:

- At least 2 years of experience working in a railroad's corporate office as an administrative assistant.
- Experience working as an administrative assistant within a law department.
- At least ten years of relevant on-the-job experience working in a non-legal corporate setting as a secretary or administrative assistant.
- A college degree is preferred.

---

[5] This Court also notes that a genuine dispute of material fact remains as to whether Plaintiff declined to interview for this position. *See* [41] ¶ 69; [43-1] (Ex. 3) at 114−17; [57] ¶ 69; [43-1] (Ex. 1) at 368−69.

- Ability to work independently, under general supervision.
- Ability to work efficiently, proactively and professionally under pressure.
- Proven communication skills: professional, courteous, tactful.

[43-4] (Ex. 11) (Sub Ex. B).

First, Defendant argues that Plaintiff did not work for at least two years in its corporate office as an administrative assistant, because her transportation clerk position does not entail administrative work. [42] at 14. But, the resume Plaintiff submitted for this position clearly states that she performed billing and customer service work in her role as a transportation clerk, both of which constitute administrative tasks. [43-4] (Ex. 11) (Sub Ex. C). And notwithstanding the implausibility of Plaintiff never performing administrative work in her role as a clerk, this Court still finds Plaintiff clearly more qualified than Mersereau in light of the current record.

Specifically, Plaintiff held a college degree. *Id.* She performed clerical work in her role at Navistar from 2006 to 2007, and balanced general ledgers and prepared reports during her seven years of employment with LaSalle Bank. *Id.* Mersereau's resume, on the other hand, stated that she was presently enrolled in DeVry University, and did not specify a specific area of study or degree. [43-4] (Ex. 11) (Sub Ex. D). Mersereau's employment history lists her role as a transportation clerk with Defendant for less than a year, and then proceeds to list experience, in unspecified roles, in various hair salons and day spas. *Id.* And although Mersereau does note that she owned and operated an LLC "delivering professional on-site bridal services" to venues in a major metropolitan area, she fails to explain exactly what this job

23

entailed or state when she owned and operated this business, or whether she performed any administrative work in this capacity. *Id.* As such, the most relevant experience this Court can find on Mersereau's resume remains that she balanced ledger sheets, although again, she does not explain when or in what capacity she performed this task. *Id.*

Further, Sprankle stated that he hired Mersereau because of her transportation clerk role, experience preparing PowerPoint presentations, and experience operating a business. [43-4] (Ex. 11). But Defendant had not just served as a transportation clerk for approximately six years longer than Mersereau, but also trained Mersereau for the position. [55] at 17; [44-1] (Ex. 1) at 244. Moreover, Mersereau's resume does not list any experience with PowerPoint. [43-4] (Ex. 11) (Sub Ex. D). And again, her resume fails to give even an estimate of when, or for how long, she operated her own business. *Id.* Based upon this record, this Court finds that no reasonable person of impartial judgment could dispute that Plaintiff was clearly more qualified for this position. *Mlynczak*, 442 F.3d at 1059−60. For this reason, Plaintiff demonstrates a triable issue as to whether Defendant's proffered reason for not hiring her was pretextual. As such, Defendant's motion for summary judgment, with respect to Counts I and II, fails as to the police services position.

### iii.    Officer Crew Lodging (5507BR)

Defendant argues that the individual hired for the Officer Crew Lodging position—Horvath, a White male—possessed superior qualifications. [42] at 13−14. It also maintains that even if Plaintiff and Horvath had similar qualifications,

Plaintiff cannot prove that Defendant, when it hired Horvath, did so pretextually. *Id.* at 14. This Court agrees and finds that Plaintiff cannot show Defendant's decision to hire Horvath based upon his qualifications constituted pretext.

The crew lodging position's job description listed the following minimum requirements:

- Strong analytical and organizational skills.
- Excellent communication skills (verbal and written)
- Proficient in Microsoft Office – (Access, Word, and Excel (Intermediate to Advanced)[)]
- Familiarity with SAP, CATS, and SRS
- Bachelor's Degree strongly recommended
- Ability to perform follow-up e-mails and calls in a timely manner
- Be available on nights and weekends via company Blackberry / Laptop
- Some travel is necessary to audit and spot check hotels

[43-4] (Ex. 2) (Sub Ex. 14). Adzgowski did not interview Plaintiff or Horvath for this specific position, as she, along with Mark Mersereau, had recently interviewed both individuals for a different position (Manager of Contract Compliance (5141BR)), and thus retained familiarity with their qualifications. [41] ¶¶ 73−74.

For this position, Plaintiff submitted the same resume that she submitted for the police services position, discussed above. *Compare* [43-1] (Ex. 13) (Sub Exhibit A) *with* [43-1] (Ex. 11) (Sub Ex. C). In fact, Adzgowski noted that Plaintiff had also submitted this resume for the Manager of Contract Compliance position for which she had previously interviewed both Plaintiff and Horvath. [43-4] (Ex. 13) ¶ 4.

This resume demonstrates that Plaintiff possessed a bachelor's degree, as well as proficiency in Microsoft Office, SAP, CATS, and SRS. [43-1] (Exhibit 2) (Sub Exhibit 14). But, aside from this information, Adzgowski noted that Plaintiff's

resume "was brief on the details, seemed generic, and demonstrated a lack of effort," in that it contained many bullet points but lacked substance about "background and work experience." [43-4] (Ex. 13) ¶ 4.

Comparatively, Horvath's resume, which he tailored to the specific position, also indicates that he maintained efficiency in Microsoft Office and SRS and held a bachelor's degree. [43-4] (Ex. 13) ¶ 5; [43-4] (Ex. 13) (Sub Ex. C). It lists Horvath's past experience as a tower signal operator, chief transportation clerk—a position with greater responsibility than Plaintiff's transportation clerk position—and supply liaison for U.S. Steel. [43-4] (Ex. 13) (Sub Ex. C). Moreover, Horvath included detailed bullet points about his analytical, organizational, and communication skills. *See, e.g., id.* ("Developed and communicated pipeline reports for the General Manager and operations"; "Handles inquiries, prepares switching orders, and processes billing documents"; and "Accurately and efficiently reports train movements"). *Id.* And Horvath's cover letter—which Plaintiff did not submit—discusses his experience overseeing 75 employees as a catering and beverage manager, maintaining accurate ledgers as a retail banker, and developing customer service skills as a front office associate at Walt Disney World. *Id.*

Based upon Horvath's background, detailed resume, and cover letter, this Court cannot find Plaintiff's qualifications sufficiently favorable toward Plaintiff so as to demonstrate pretext. Rather, the record shows that Adzgowski reasonably concluded Horvath possessed leadership experience and an independent work ethic based upon his chief transportation position, and valued his work at Walt Disney

World given the crew lodging position's focus on travel and lodging. [41] ¶ 74; [43-4] (Ex. 13) ¶ 5. And although Plaintiff disputes whether she or Horvath received better scores on individual questions within their interviews, *see, e.g.*, [58] ¶ 12, this Court cannot reevaluate each candidate's answer to every interview question, thereby second-guessing Adzgowski's judgment.[6] *See, e.g.*, *Hudson Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004) (quoting *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 395 (7th Cir. 1998)). Instead, this Court must look to "whether the employer gave an honest explanation of its behavior." *Id.* Horvath certainly possessed qualifications for the Officer Crew Lodging position, and thus this Court cannot find pretext based solely upon Defendant's decision to hire him over Plaintiff. Given the record, Plaintiff's crew lodging position claim also fails the *McDonnell Douglas* analysis.

**B.** *Ortiz* **Analysis**

Under *Ortiz*, this Court must assess Plaintiff's evidence cumulatively and determine whether it would permit "a reasonable factfinder to conclude" that Defendant failed to hire Plaintiff because of her race or gender. 834 F.3d at 765. Aside from Plaintiff's superior qualifications for the police services position, this Court can find no other evidence, under *Ortiz*'s holistic approach, to save her additional race and gender-based discrimination claims.

---

[6] As noted above, while Mark Mersereau, as a recruiter, assisted with the interview process, Adzgowski, as the hiring manager, maintained ultimate hiring authority for the position. [43-1] (Exhibit 3) at 62.

For example, Plaintiff provides no evidence to suggest racial or gender-based animus in Defendants' hiring processes. Of the 22 individuals hired for the eleven open positions originally at issue in this case, Defendant hired 12 individuals belonging to a minority group (eight of whom are African-American) and nine women (four of whom are African-American). [43-1] (Ex. 8) ¶ 9; [43-4] (Ex. 9) ¶ 5.

To be sure, hiring African-American or female employees "does not entitle [employers] from immunity from subsequent discrimination allegations." *Whitfield*, 755 F.3d at 444. Rather, courts must ask "whether the plaintiff has established a logical reason to believe that the decision rests on a legally forbidden ground." *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996). But here, Plaintiff offers no other persuasive evidence from which this Court can find race or gender-based discrimination.

For example, Plaintiff identifies one individual—Senior Manager of Transportation Katie Roop—who she believes discriminated against her based upon race. [57] ¶ 16; [43-1] (Ex. 1) at 55. According to Plaintiff, she asked Roop to serve as her mentor via e-mail, but Roop declined and referred her to an African-American supervisor instead. *Id.* Roop, however, acknowledges that Plaintiff asked for her mentorship, and notes that she declined because she did not serve as Plaintiff's direct supervisor. [43-4] (Ex. 14) ¶¶ 3–4. Instead, Roop referred Plaintiff to Cheryl Clark—Plaintiff's direct supervisor. *Id.* According to Roop, Clark then provided Plaintiff with interview advice, gave her special projects to work on within the department, and reviewed Plaintiff's resume with her. *Id.* ¶ 4. Roop has never personally

mentored any employee in her department since becoming a manager, nor did she provide any information to a hiring manager about Plaintiff or serve as the hiring manager for any of the positions at issue in this case. *Id.* ¶¶ 5–6; [43-1] (Ex. 8) ¶ 12. Based upon this record, this Court cannot find Roop's referral to Clark indicative of race-based discrimination.

In short, Plaintiff's argument appears to rest primarily upon the fact that she applied to, and did not get, a great deal of positions with Defendant. [55] at 4. But, the record demonstrates that Plaintiff lacked the merit of other candidates; and ultimately, Defendant chose a diverse pool of individuals with comparable qualifications. In other words, the record, considered as a whole, does not allow a reasonable fact finder to conclude that Plaintiff's race or gender played a role in Defendant's hiring decisions—aside from the police services position, for which Plaintiff was clearly better qualified and triable issues remain unresolved.

Absent any additional connection between Plaintiff's repeated non-selection and her race and/or gender, either through the *McDonnell Douglas* or *Ortiz* frameworks, only Counts I and II, to the extent they include Plaintiff's race discrimination claim for the police services position, survive summary judgment. This Court grants Defendant's motion for summary judgment as to Count III, as well as to Counts I and II, to the extent they include the Benefits Administrator – Attendance Management and Officer Crew Lodging positions.

## IV. Conclusion

This Court grants Defendant's motion for summary judgment [39] as to Count III, and as to Plaintiff's Benefits Administrator – Attendance Management and Officer Crew Lodging arguments in Counts I and II. This Court denies Defendant's motion for summary judgment [39] as to Plaintiff's Administrative Assistant – Police Services position, included in Counts I and II. This Court also denies Plaintiff's motions to strike [45] [46]. All dates and deadlines stand.

Dated: July 15, 2019

Entered:

John Robert Blakey
United States District Judge